STATE, EX REL. PIERSON, COUNTY COLLECTOR, v. MAYOR
AND COMMON COUNCIL OF NEWARK.

> The board of freeholders of the county of Essex being directed to as-
> sess the interest on the costs of laying certain avenues, in the ratio of
> one-half on the cities and townships benefited by such avenues, and
> the other half on the county at large, laid an undue portion on the
> county, whereby the city of Newark was injured. *Held*, such city had
> the right to a *certiorari* to have such apportionment reviewed.
> *Further held*, that the payment of the tax under such illegal appor-
> tionment by the individual citizens, did not prevent the city from set-
> ting aside the same.
> *Held further*, that although such tax had been collected, the court, in
> the exercise of its discretion, would not aid the county by *mandamus*
> to obtain the moneys so illegally exacted.

There were two of these cases argued together, the one
being on a *certiorari*, the other on an application for a *man-
damus*.

For the plaintiff in error, *John W. Taylor*.

For the defendant in error, *Henry Young*.

·The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    The *certiorari* in this case was
addressed to the board of chosen freeholders of the county of
Essex, and required such body to send to the Supreme Court,
in the language of the writ, "a certain assessment of county
taxes for road board purposes, made by the said board of
chosen freeholders of the said county of Essex for the year
1879, and now in process of collection."

The assessment which had thus been put in litigation had
been made under the following circumstances: By the Road
Board act of 1870, the freeholders were required to apportion
the interest due on the cost of constructing avenues in Essex
county in the ratio of one-half on the towns, cities and town-
ships through which such avenues were constructed, and the

remaining half on the county at large. In the year 1877, the freeholders included in the general county levy the sum of $65,897.38, for interest on the cost of constructing these avenues, instead of making distribution of it as the act directed, whereby the city of Newark was called upon to pay the sum of $47,754.27 in excess of the amount for which it was legally liable. That assessment was set aside by the Supreme Court on *certiorari*, the ruling being that the city was not a debtor for any part of the moneys in question. Under an agreement for restitution, the city, while the proceedings under the *certiorari* were pending, paid to the county the tax in dispute, and also a similar tax for the year 1878. In April, 1879, in accordance with the decision of the Supreme Court and of the above-mentioned stipulation, the county repaid to the city the moneys thus received, and then in the same year so apportioned the county taxes as to impose on the city of Newark a considerable part of the moneys from the payment of which it had been judicially declared to be exempt. The *certiorari* in the present case brought before the Supreme Court this last apportionment, and the judgment in that tribunal setting aside and vacating such apportionment, is the subject of the present writ of error.

From this statement of the facts of the case, it is perfectly clear that the city of Newark should not, in justice, be obliged to pay any part of the moneys in question. So far, the matter is *res adjudicata* in the Supreme Court, and likewise in this court, for the decision of the former court, on the first *certiorari*, was affirmed by a judgment standing on our records. The arguments urged before us against the judgment under review are, consequently, exclusively of a technical character.

These are the objections relied on :

First, it is insisted that as the city of Newark is not the party assessed, the tax-payers being such parties, it cannot assail this assessment on the ground of its illegality. But the answer to this argument is, that the city is the party in this case that has been primarily wronged, for this illegal apportionment has been made against it as one of the subdivisions of

the county.   But it is further said, in this same relation, that conceding that the city had the right to prosecute this writ, that such right must be that of standing as the representative of the tax-payers, and that as such tax-payers have voluntarily paid the tax in question, neither they nor their agent can now object to the validity of the tax so paid.   If we were to adopt the theory of representation on which this exception is founded, in order to defeat the right of the city to take the ground assumed by it, this case would have to show that not only some, or most, but that all of the tax-payers had made voluntary payments of these moneys, whereas the record and return before us do not manifest that any part of them was paid.   All that we know upon the subject is, that the writ of *certiorari* states that at the time of its *teste* the moneys assessed were in the process of collection.   The absence of the requisite proof is therefore fatal to the alleged estoppel, but before leaving the subject it may not be amiss to state that this notion of the corporation in this instance being the representative of the tax-payers in the sense that their action can estop the city in the vindication of its right to have an apportionment of the taxes made in the mode prescribed in the act, is not concurred in.   The apportionment in question is an injury to the city in its corporate capacity.

But again it is said that if the city was entitled to prosecute this writ, it applied for such process at too late a period, and that on that account the objections made to this assessment ought not to be considered.

I am inclined to think that no laches in the respect in question is, under the circumstances, imputable to this defendant in error, but if such were the fact, this exception should have been made in the court below.   The proper course would have been to move to dismiss the *certiorari*, and the record does not show that any such step was taken.   It is altogether irregular to raise it at this stage of the proceedings.

The last defect in the proceedings insisted on is, that the *certiorari* requires the freeholders to certify to the court " a certain assessment of county taxes," whereas it is said there

could be no assessment by such board, as it merely orders money to be raised for county purposes, and which money is afterwards assessed by assessors, and that there is no assessment before the intervention of such latter officers. As a legal point, this exception has no force; and even as a verbal criticism it is far-fetched. The board of freeholders is required by the statute to distribute, in a certain ratio, the burthen of this tax between the cities, townships and county; such apportionment is an assessment, and it is styled such in the return to the present *certiorari*, a return which has the signature of the counsel who now puts forward this objection.

The judgment of the Supreme Court, in this case, must be affirmed.

From this result it necessarily follows that the application of the board of freeholders for a peremptory *mandamus* requiring the city of Newark to pay it the moneys above mentioned, was, in the opinion of this court, properly rejected in the court below. In a suit for a *mandamus*, the applicant for the writ must show a clear legal right; and in matters of public interest, that the enforcement of such right will not occasion general inconvenience. In the present case the setting aside, in the procedure by virtue of the writ of *certiorari*, of the illegal apportionment of the county taxes, withdrew from this board of freeholders every semblance of a rightful claim to the moneys in question. In fact, as the matter now stands, it appears that these freeholders have committed a legal misfeasance, and are here asking this court to help them realize the fruits of it. The argument by which it is sought to lead to this undesirable end is, that as these taxes have been levied and raised they must be paid to the county in virtue of the assessment made in its favor. In support of this position, decisions are referred to which declare the rule that it is forbidden to ministerial officers engaged in collecting taxes to question either the legality of their imposition or the right of the corporate body in whose behalf they have been assessed. But in answer to this, it is to be observed that this *mandamus*, as it is prayed for, is to

go, not against a mere ministerial officer, but against the mayor and common council of the city of Newark in their corporate capacity, so that the county is here endeavoring to take from one of its subdivisions these moneys to which it has been judicially decided that the county has no title. These moneys have been illegally exacted from the citizens of the city of Newark; and although they have been paid over to the collecting officers, they do not belong, of right, to the county, and the court, under the peculiar circumstances of the case, will not, by the exercise of a discretionary power, aid it in its effort to take possession of them. Indeed, success in the present attempt would have laid the way for a repetition of the wrongful procedure. in question, and these unlawful burthens might have been annually hereafter laid upon the city by this board of freeholders in spite of the courts and of the statute.

The judgment of the Supreme Court, in this case also, should be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DIXON, KNAPP, MAGIE, PARKER, REED, SCUDDER, CLEMENT, COLE, GREEN, KIRK, PATERSON, WHITAKER.    14.

*For reversal* — None.